**Thelma J. BURNS, Administratrix of the Estate of Bruce O. Burns, Deceased, Plaintiff,**

v.

**D. OLTMANN MARITIME PTE LTD., Neptune Shipmanagement Services PTE., Ltd., and Neptune Orient Lines, Defendants.**

Action No. 2:95cv631.

United States District Court, E.D. Virginia, Norfolk Division.

Sept. 29, 1995.

---

**6.** *See Schuler–Haas Elec. v. Aetna Cas. & Sur.,* 49 A.D.2d 60, 371 N.Y.S.2d 207 (1975) (surety was still liable despite the existence of a pay when paid clause in the subcontract and in a simultaneously executed performance bond). The court noted that a clear expression that a subcontractor could not sue on the payment bond until the owner had made final payment to the general contractor would be required in the payment bond for the surety to avoid liability. Such a limitation conditioning Continental's liability under the payment bond would render the bond of no effect under our statute since it would not meet the requirements of section 259, namely, it would not obligate the surety to pay all sums due and subcontractors would still have their lien rights against the owner's property. 28 V.I.C. § 259.

William David Breit, Breit, Drescher & Breit, Norfolk, VA, for plaintiff.

Denham Arthur Kelsey, Hunton & Williams, Norfolk, VA, for defendants.

## OPINION AND ORDER

MILLER, United States Magistrate Judge.

This matter comes before the Court on motion by the defendants for summary judgment. All the parties have consented to have all proceedings in this case conducted before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Bruce O. Burns, a longshoreman, was fatally injured during stevedoring operations aboard the *M/V Neptune Jade* on May 24, 1993. Burns was employed by Ceres Marine Terminals, Inc. ("Ceres"), a stevedore company which hires longshoremen to load and unload vessels in the Port of Hampton Roads. Burns is a "lasher," a title given by the Hampton Roads Longshoremen's Agreement to longshoremen specifically skilled in the lashing and unlashing of containers. According to the Agreement, "lashers" are the only longshoremen allowed to perform these duties.

The *M/V Neptune Jade* hired Ceres to perform stevedoring operations for the vessel. On May 24, 1993 at around 1:00 p.m., the Ceres superintendent boarded the *M/V Neptune Jade*. He inspected the vessel and its equipment to ensure the longshoremen would be safe during the loading and unloading of the vessel. The superintendent found the vessel to be safe, and the longshoremen began their work. The loading, unloading, and lashing operations aboard the *M/V Neptune Jade* were handled exclusively by Ceres, and the longshoremen on the vessel were under Ceres' direction and control. They did not report to, and were not supervised by the shipowner or crew of the vessel.

During the stevedoring activities, Burns lost control of a lashing rod as it was extended over his head. The lashing rods are 187 inches long and weigh approximately 46 pounds. As Burns tried to gain control of the rod, the end of the rod that he was holding caught in his clothes and pulled him over the side of the vessel onto the pier. Burns suffered a massive head injury, was

hospitalized, and died as a result. The accident was investigated by William Parker, the manager of stevedoring for Ceres. William Parker then reported the accident to the U.S. Department of Labor, Office of Workers' Compensation Programs, which administers the LHWCA. Ceres paid Burns' beneficiaries $100,270.74 in LHWCA benefits.[1]

Plaintiff alleges Burns' accident was caused by the height of the guardrail, and the semi-automatic twistlocks used by the *M/V Neptune Jade*. The lashers use these container twistlocks to secure containers one on top of the other.

Ceres had actual knowledge of the design of the lashing platforms and guardrails on the *M/V Neptune Jade* as well as the use of semi-automatic twistlocks at the time of the superintendent's inspection on May 24, 1993. Ceres prefers the use of semi-automatic twistlocks because they eliminate the need for the longshoremen to go on top of the containers during the stevedoring operations.

Plaintiff Thelma J. Burns filed the original complaint against the owner, charterer, and manager of the *M/V Neptune Jade* on May 23, 1995 in the Circuit Court of the City of Norfolk. Defendants removed the case to this court and filed an answer on June 16, 1995.

This matter comes before the Court on a motion by the defendants for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). Defendants filed this motion on August 4, 1995 with supporting memorandum and the affidavits of William Parker, John Hove, and Fabian Chew. On August 18, 1995, plaintiff filed a memorandum in opposition to defendants' motion[2], and defendants replied with a rebuttal memorandum on August 24, 1995.

Also on August 24, 1995, plaintiff and defendants consented to proceed before a United States Magistrate Judge. Defendants'

motion for summary judgment was ordered referred to a United States Magistrate Judge for decision on August 25, 1995.

After a review of the memoranda submitted by the parties, and the applicable statutory and case law, the Court GRANTS the defendants' motion for summary judgment.

## II. *STANDARD FOR A SUMMARY JUDGMENT MOTION*

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). For the evidence to present a "genuine" issue of material fact, it must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Facts are deemed material if they might affect the outcome of the case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, the moving party's submission must foreclose the possibility of the existence of facts from which it would be open to a jury to make inferences favorable to the non-movant. *Id.*

In deciding a summary judgment motion, the court must view the record as a whole and in the light most favorable to the non-moving party. *Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.,* 763 F.2d 604, 610 (4th Cir.1985). Either party may submit as evidence "pleadings, depositions, answers to interrogatories, and admissions on file, together with ... affidavits" to support or rebut a summary judgment motion. Fed.R.Civ.P. 56(c). Supporting and opposing affidavits must be based on personal knowledge and must set forth facts that would be admissible in evidence. *Id.* at 56(e). Furthermore, the party moving for summary judgment need not supply "affidavits or oth-

---

**1.** Following the accident, OSHA issued a Citation of Notice of Penalty against Ceres which recommended a 42 inch guardrail for lashing platforms, or the use of a safety belt with a lanyard. OSHA did not require Ceres or the M/V Neptune Jade to make any changes in the design or construction of the lashing platforms which have a guardrail under 42 inches.

**2.** Plaintiff filed the affidavit of Billie Hobbs, an attorney, which states the Michael Parker, a witness to the accident, will testify at the hearing. No other affidavits were filed by the plaintiff.

er similar materials negating the opponent's claim." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552.

Rule 56 mandates a grant of summary judgment against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The party who bears the burden of proving a particular element of a claim must "designate 'specific facts showing that there is a genuine issue for trial'" with respect to that element. *Id.* at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)).

When a motion for summary judgment is made and supported by affidavits as provided for in Rule 56, an adverse party may not rest upon mere allegations or denials of the moving party's pleadings. Rather, the rule requires the nonmoving party's response, by affidavits or as otherwise provided for in Rule 56, to set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment if appropriate, should be entered against the nonmoving party. Fed.R.Civ.P. 56(e); *Atkinson v. Bass*, 579 F.2d 865, 866 (4th Cir.), *cert. denied*, 439 U.S. 1003, 99 S.Ct. 615, 58 L.Ed.2d 679 (1978).

In addition, the opposing party is entitled under Rule 56(f) to set forth in affidavit reasons why he is presently unable to present by evidentiary affidavit facts essential to justify his opposition. Fed.R.Civ.P. 56(f); *Atkinson*, 579 F.2d at 866. If the reasons are adequate, the trial judge has broad discretion to determine whether to deny the motion for summary judgment, order a continuance, or make some other just disposition. *Id.*

With these controlling principles in mind, the Court turns to the merits of the motion.

## III. *ANALYSIS*

The Longshore Harbor Workers Compensation Act ("LHWCA") provides a comprehensive federal workers' compensation program to longshoremen and their families. 33 U.S.C. § 901 *et seq.; see Howlett v. Birkdale Shipping Co., S.A.*, —— U.S. ——, ——, 114 S.Ct. 2057, 2062, 129 L.Ed.2d 78 (1994). The employer, usually an independent stevedore, is statutorily liable to any longshoreman who suffers disability or death "upon navigable waters of the United States."[3] 33 U.S.C. § 903. The LHWCA shields the employer from any further liability. 33 U.S.C. § 905(a). However, the Act allows the longshoreman to bring a third party action against the owner of the vessel if the injuries were caused by the vessel's negligence. 33 U.S.C. § 905(b).

The 1972 amendments to the LHWCA abolished the longshoreman's right to recover from the shipowner for unseaworthiness, and restructured the third-party action.[4] "The design of these changes was to shift more of the responsibility for compensating injured longshoremen to the party best able to prevent injuries: the stevedore-employer." *Howlett v. Birkdale* at ——, 114 S.Ct. at 2063. Congress left the standard of care in § 905(b) for determination by the courts, and the Supreme Court clarified the standard in *Scindia Steam Nav. Co., Ltd. v. De Los Santos*, 451 U.S. 156, 166–175, 101 S.Ct. 1614, 1621–25, 68 L.Ed.2d 1 (1981). The shipowner owes the duty to:

> (1) exercise "ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property," including the duty to warn the stevedore of any hidden dangers which he knew or should have known about and which were unknown to the stevedore or the stevedore would not be-

---

**3.** Navigable waters include any "adjoining pier, wharf, ... used by an employer in loading, unloading...." 33 U.S.C. § 903(a).

**4.** "In the event of injury to a person covered under this Act caused by the negligence of a

vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party...." 33 U.S.C. § 905(b).

come aware of or anticipate, *Id.* at 167, 101 S.Ct. at 1621,

(2) exercise due care with respect to the safety of the longshoremen if the vessel becomes actively involved in the cargo operation, *Id.,* and

(3) intervene if he knew or should have known that the stevedore's decision to continue operations despite a known hazard was "obviously improvident". *Id.* at 175, 101 S.Ct. at 1625.

The court later labeled these duties the turnover duty, the active control of the vessel duty, and the duty to intervene. *Howlett v. Birkdale,* —— U.S. at ——, 114 S.Ct. at 2063.

## A. Turnover Duties

■ Plaintiff alleges the defendants were negligent in their turnover duties. The Fourth Circuit addressed this issue in *Bonds v. Mortensen and Lange,* 717 F.2d 123, 1984 AMC 1400 (4th Cir.1983). A longshoreman suffered fatal injuries when a gantry bell malfunctioned. *Id.* This bell was supposed to sound a warning anytime a certain crane moved. *Id.* at 124. Because of the design of the crane and the malfunctioning bell, the longshoreman was unable to get out of the way of the moving crane in time, and he was crushed. *Id.* The Court found that the bell had been malfunctioning at the commencement of stevedoring operations which was three days prior to the accident. *Id.* at 127. Consequently, the court held the malfunctioning bell and the ship's design were obvious and known to all. *Id.*

Stating that "the shipowner may rely on the stevedore in the first instance to avoid exposing the longshoremen to unreasonable hazards," the Fourth Circuit held the shipowner was not negligent when he turned over the vessel to the stevedore knowing the gantry bell was malfunctioning. *Id.* at 127–128.

In addition, the Fourth Circuit has upheld this court's summary judgment holdings for shipowners on the issue of turnover duties in two unpublished opinions. *See Whittaker v.*

**5.** The Fourth Circuit did allow a § 905(b) claim to go to the jury because of the active involvement of the vessel where a longshoreman sustained injuries from falling down an open hatch.

*Hapag–Lloyd,* No. 92–2001, slip op. 995 F.2d 1065 (4th Cir. June 7, 1993); *Hall v. Atlantic Container Line,* No. 94–1272, slip op. 42 F.3d 1385 (4th Cir. Nov. 29, 1994).

In *Whittaker,* a longshoreman fell on a slippery substance as he walked across an unlighted area. *Whittaker v. Hapag–Lloyd* at 2. The Court found the oil or grease on the deck was not a hidden hazard, and that the stevedore knew the light was not working. *Id.* at 4. Therefore, the shipowner was not negligent. *Id.*

In *Hall,* the longshoreman stepped in a tiedown hole and twisted his ankle. *Hall v. Atlantic Container Line* at 2. The Court held that the poor design of the tie-down holes, the poor lighting, and the absence of rubber boots inside some of the tie-downs were all open and obvious conditions. *Id.* at 4–5. Therefore, "the vessel was justified in relying on the stevedore to determine whether the unloading could be carried out." *Id.*

In this case, the height of the guardrail on the lashing platform and the use of semiautomatic twistlocks do not constitute hidden dangers. Ceres knew that these twistlocks were used by the *M/V Neptune Jade* at the time stevedoring operations commenced on the date of the accident. The use of twistlocks was an open and obvious condition on board the *M/V Neptune Jade.* Under the Fourth Circuit opinions, the defendants were entitled to rely on the judgment of Ceres on May 24, 1993 to continue stevedoring operations. The defendants did not breach their turnover duties.

## B. Active Involvement

■ In addition, no evidence has been presented of active involvement by the *M/V Neptune Jade* in the cargo operation of Ceres on May 24, 1993. Stevedoring activities began at 1:00 p.m. with the inspection of the vessel by the Ceres superintendent. The longshoremen, including Michael Parker, began their work following the investigation, and were under the direction and control of Ceres when the accident occurred.[5]

*Hodges v. Evisea Maritime Co., S.A.,* 801 F.2d 678, 683, 1987 A.M.C. 511 (4th Cir.1986). Evidence was presented that lights had been turned out in the area of the accident by a crew mem-

208

## C. Duty to Intervene

■ The Court also disagrees with plaintiff's allegation that the defendants breached their duty to intervene. *Scindia* establishes that the shipowner has a duty to intervene when a stevedore's decision to continue operations despite a known hazard presents an unreasonable risk of harm to the longshoremen. *Scindia Steam Nav. Co.*, 451 U.S. at 176, 101 S.Ct. at 1626. The following cases demonstrate the extent of discretion which the Fourth Circuit grants stevedores in determining which hazards present an unreasonable risk of harm to the longshoremen.

The stevedore in *Bonds* continued operations with the knowledge that the gantry bell was malfunctioning,

> "[the stevedore] obviously concluded that these conditions did not pose an unreasonable risk of harm, for the longshoremen proceeded to unload the ship's cargo without complaint or incident until the time of the accident." *Bonds v. Mortensen and Lange* at 134.

The Fourth Circuit stated there were safe alternatives available to the stevedore which would have avoided the accident, *id.* at n. 5, and the decision to continue operations was not "obviously improvident." *Id.* at 128. Similarly, the slippery substance on the deck of the vessel in *Whittaker* coupled with poor lighting did not result in an "obviously improvident" decision by the stevedore to continue working. *Whittaker v. Hapag–Lloyd* at 4. In *Hall*, the poor design of tie-down holes, the poor lighting, and the absence of rubber boots inside some of the tie-down holes did not constitute such a severe hazard that the stevedore's decision to proceed with the unloading was "obviously improvident." *Hall v. Atlantic Container Line* at 4–5.

The above cases suggest that only the most eggregious decisions by the stevedore are "obviously improvident," and give rise to the shipowner's duty to intervene. In the present case, Ceres knew the design of the vessel's platform and guardrails, and that the *M/V Neptune Jade* used semi-automatic

twistlocks when stevedoring operations began. In fact, this is the type of twistlock which Ceres prefers. Parker has not alleged that the twistlock he was working with was malfunctioning. The defendants had no indication that a "hazard" existed on board the vessel. The evidence does not support a finding that Ceres' decision to proceed with stevedoring operations on May 24, 1993 was "obviously improvident." Therefore, the defendants did not breach their duty to intervene.

Viewing the record as a whole in the light most favorable to the plaintiff, the defendants were not negligent in either their turnover duties, their active control duties, or their duty to intervene. Therefore, the plaintiff is not entitled to recover under LHWCA § 905(b).

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the defendants' motion for summary judgment and ORDERS the Clerk to enter judgment in favor of the defendants.

---

ber, that it was the vessel's duty to close the hatches, that the hatch involved had been left open for the convenience of the crew, and that the longshoremen had completed stevedoring activities in the area. *Id.* The Court determined there was sufficient evidence that the vessel was in control of the area of the accident to create a jury issue regarding the vessel's negligence. *Id.*